IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MONTE TAYLOR,

    Petitioner,

vs.                             No. CIV-S-05-2528 FCD KJM

JAMES TILTON, Director
of California Department of Corrections
and Rehabilitation, et al.[1]

    Respondent.               FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a California prisoner proceeding with counsel with an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his Butte County conviction for vehicular manslaughter with gross negligence and felony child endangerment stemming from an automobile accident that killed his wife, Kathleen Taylor. On August 9, 2006, respondent filed a motion to dismiss the petition as being untimely. Petitioner has filed an opposition, and respondent a reply. On January 19, 2007, this court issued an order directing petitioner to provide further evidentiary support regarding the time and manner of his retainment of attorneys Richard

---

[1] The court substitutes James Tilton, the current director of CDCR, for Roderick Q. Hickman. Fed. R. Civ. P. 25(d)(1).

1

1  Dangler and Frederick C. Thomas of Rector & Tosney.  On February 20, 2007, petitioner filed
2  affidavits of Mr. Thomas and C. Roman Rector, also of Rector & Tosney, along with supporting
3  documentation.  On March 21, 2007, respondent filed a response to these affidavits.
4         On July 16, 2007, the court ordered petitioner to submit further briefing on the
5  issue of equitable tolling. Petitioner submitted that brief on July 28, 2007.  Neither petitioner nor
6  respondent have filed further briefing or exhibits.
7  I. Background
8         On September 20, 2001, petitioner was convicted of vehicular manslaughter with
9  gross negligence and felony child endangerment in Butte County Superior Court.  Petitioner was
10 sentenced to two consecutive sentences of twenty-five-years-to-life, after the trial court
11 determined that he had suffered at least three prior convictions for serious or violent felony or
12 juvenile adjudications.  Petition (Pet.) at 1-2.
13        Petitioner appealed his conviction to California's Third Appellate District, which
14 affirmed the judgment on March 27, 2003.  Id., Ex. 1.  On June 18, 2003, the California Supreme
15 Court denied his petition for direct review.  Id. at 3.
16        As confirmed in a letter dated October 8, 2003, petitioner retained attorney
17 Richard H. Dangler to file petitions for writ of habeas corpus in Butte County Superior Court
18 through the California Supreme Court.  Affidavit of C. Roman Rector (Rector Aff.), Ex. B.  On
19 February 20, 2004, Mr. Dangler filed a petition for a writ of habeas corpus with Butte County
20 Superior Court.  This petition was denied on February 25, 2004.  Pet., Ex. 3.
21        In June 2004, Mr. Dangler faced disciplinary action in the Third Appellate District
22 relating to his filing of three unrelated petitions for habeas corpus in that court. See In re White,
23 121 Cal.App.4th 1453 (2004).  In order to mitigate court sanctions, Mr. Dangler agreed to resign
24 from the state bar on or about June 28, 2004.  Rector Aff., Ex. A.  On June 11, 2004,
25 Mr. Dangler wrote a letter to petitioner explaining his intention to retire from practice, and
26 recommending that petitioner's case be transferred to C. Roman Rector.  Id.  Mr. Dangler and

1  Mr. Rector shared office space, and had worked together on several occasions in bankruptcy
2  proceedings and habeas proceedings. <u>Id</u>.; <u>see also</u> <u>In re White</u>, 121 Cal.App.4th at 1459; <u>Thorson</u>
3  <u>v. Palmer</u>, 479 F.3d 643 (9th Cir. 2007) (listing both Dangler and Rector as counsel for habeas
4  petitioner). Petitioner agreed to be represented by Mr. Rector's office on July 7, 2004. Rector
5  Aff., Ex. A.
6  On August 5, 2004, the California Supreme Court received petitioner's petition
7  for writ of habeas corpus, and denied it on July 13, 2005. Pet., Ex. 4. Petitioner filed the instant
8  petition on December 14, 2005.

II. <u>Analysis</u>

A.  <u>The Statute of Limitations</u>

Respondent has filed a motion asking that this case be dismissed as time-barred under the provisions of the Anti-Terrorism and Effective Death Penalty Act (AEDPA).  One of the changes the AEDPA made to federal habeas law was adding a statute of limitations for the filing of habeas petitions:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

A conviction is final for the purposes of the AEDPA statute of limitations at the expiration of the ninety day period for seeking certiorari to the United States Supreme Court. Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999). In the instant case, the California Supreme Court denied review on June 18, 2003. Pet., Ex. 2. The ninety day period for seeking certiorari ended on September 16, 2003. Thus, the statute of limitations began to run on September 17, 2003, and ran out on September 17, 2004, absent any tolling of the statute. Fed. R. Civ. P. 6(a) (excluding the day on which the period begins to run from the calculation of time).

Petitioner does not dispute that the limitations period ran for 156 days after it began, until petitioner filed his petition for collateral relief in the Superior Court of Butte County on February 20, 2004. Opposition to Motion to Dismiss (Opp'n) at 1:26-28. Petitioner also does not dispute that the limitations period continued to run between the California Supreme Court's denial of collateral relief, on July 13, 2005, and the filing of the petition to this court on December 14, 2005. Opp'n at 2:1-3. During this period, petitioner expended another 153 days of the limitations period.

The AEDPA's statute of limitations is tolled during the pendency of any "properly filed" state collateral attack on the judgment. Nino v. Galaza, 183 F.3d 1003, 1006-07 (9th Cir. 1999). Accordingly, respondent acknowledges that the limitations period was tolled during the period between petitioner's filing of the petition for collateral relief in Butte County Superior Court on February 20, 2004, and the Superior Court's denial of that petition on February 25, 2004. Motion to Dismiss (MTD) at 4:2-5. Likewise, respondent does not dispute that petitioner is entitled to statutory tolling during the period between petitioner's filing of the petition in the

/////

4

California Supreme Court on August 5, 2004, and the Supreme Court's denial of that petition on July 13, 2005.  MTD at 5:2-4.

Thus, the only time period being contested in this motion is the time period between the Superior Court's denial of collateral relief on February 25, 2004 and the filing of the petition in California Supreme Court on August 5, 2004, a period of 161 days.  Respondent argues this period should not be tolled, because the California Supreme Court petition was not filed within a reasonable time.  Thus, respondent argues, the instant petition was filed 470 days after the statute began to run, and so should be dismissed.  Petitioner argues that the petition was filed in a timely fashion or, in the alternative, that there was good cause for any delay.

B. Statutory Tolling

In some instances, the time period between the denial of collateral relief at one level of state court and the filing of a petition at the next level is deemed to be tolled as part of the time in which the petition was pending, so long as there was no undue delay between the denial of one petition and the filing of another.  Biggs v. Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003).  Once a respondent places a petitioner on notice that a federal petition is subject to dismissal as untimely, petitioner has the burden of proving that he is entitled to tolling.  Smith v. Duncan, 297 F.3d 809, 814-15 (9th Cir. 2002).  In the instant case, respondent argues petitioner is not entitled to statutory tolling for the 161 day period between February 25, 2004 and August 5, 2004, because the petition was not filed in a timely fashion.  Thus, under federal law, petitioner bears the burden of proving he is entitled to statutory tolling for this period.

In most states, a statute sets out a time period for filing a petition for collateral relief or appealing the denial of such a petition, typically between thirty and sixty days.  See Carey v. Saffold, 536 U.S. 214, 219 (2002).  California, however, has a special system governing collateral review of criminal penalties, whereby a petitioner can challenge a court's denial of collateral relief by filing a new, original petition at the next appellate level.  Such a petition is considered timely if it is filed within a reasonable time.  In re Harris, 5 Cal. 4th 813, 828 n.7

1  (1993).  In cases where a California court has denied collateral review without commenting on
2  timeliness, a federal habeas court must undertake an independent review, deciding whether the
3  state court petition was filed within what California would consider a "reasonable time."  Evans
4  v. Chavis, 546 U.S. 189 (2006); Gaston v. Ramirez, 447 F.3d 1165 (9th Cir. 2006).  In the instant
5  case, the California Supreme Court denied review without comment.  Pet., Ex. 4.  Thus, this
6  court must conduct its own review of how California law would view petitioner's taking 161
7  days to file his Supreme Court petition.

8  Under California law, a petitioner must file a habeas petition within a reasonable
9  time after he and his counsel knew, or with due diligence should have known, the facts
10 underlying the claim, as well as the legal basis for the claim.  Harris, 5 Cal. 4th at 813.  Petitioner
11 bears the initial burden of proving that the petition was filed within a reasonable time.  In re
12 Clark, 5 Cal. 4th 750 (1993).  If he does not meet this burden, then he must articulate specific
13 reasons to justify substantial delay.  In re Gallego, 18 Cal. 4th 825 (1998); In re Robbins,18 Cal.
14 4th 770 (1998).  If petitioner cannot justify the delay, then a court may reach the merits only if
15 the petitioner asserts facts demonstrating that a "fundamental miscarriage of justice occurred as a
16 result of the proceedings leading to conviction and/or sentence."  Clark, 5 Cal. 4th at 759.  Thus,
17 under California law, the court must first consider whether petitioner's taking 161 days to file at
18 the next level can be considered a "reasonable" amount of time.  If not, then the court must
19 decide whether petitioner has demonstrated good cause for any substantial delay.  If the court
20 finds a substantial delay without good cause, it must then determine whether petitioner is alleging
21 a fundamental miscarriage of justice.

22 In Evans, the Supreme Court suggested that a gap longer than the thirty to sixty
23 days provided for in other states might be reasonable; however, an unexplained six month delay
24 was not.  546 U.S. at 201 ("Six months is far longer than the 'short periods of time,' thirty to
25 sixty days, that most states provide for filing an appeal to the state supreme court . . .  We have
26 found no authority suggesting, nor found any convincing reason to believe, that California would

consider an unjustified or unexplained six month filing delay 'reasonable.'").  In the instant case, petitioner delayed for more than five months before filing a petition in the California Supreme Court.  Like the delay in Evans, this delay falls well outside the statutory provisions of most states.  As the party with the burden, petitioner has not cited any case or other authority suggesting that a California court would find a five month delay to be reasonable, in and of itself.  Thus, on the basis of Evans, this court concludes that a California court would not find that the petition was filed within a reasonable time under Harris.  The court now considers whether petitioner has provided adequate justification for the filing delay as required by Gallego and Robbins.

        Petitioner argues that the filing delay in this case was justified because he was effectively abandoned by his former counsel, Richard Dangler.  California has recognized that attorney abandonment can constitute good cause for filing delays in some cases.  In re Sanders, 21 Cal. 4th 697 (1999).  In Sanders, the court held:

> We discern two general situations in which we might find abandonment by counsel constituting good cause for the delay in filing a petition.  First, abandonment would occur if . . . counsel did absolutely nothing to commence a habeas corpus investigation, or otherwise failed to acknowledge his or her habeas corpus responsibilities . . .  Second, abandonment also occurs when counsel ceases representation before he or she should have done (i.e. before investigation is complete and/or before counsel has a reasonable basis upon which to conclude that no potentially meritorious habeas corpus issue exists).  Under either form of abandonment, counsel's inaction places a habeas corpus petitioner in the same position as he or she would have been had he or she been unrepresented.

Id. at 708-09.

        Petitioner argues that the filing delay is justified on the basis of Sanders because he was essentially abandoned by Mr. Dangler due to Mr. Dangler's disciplinary proceedings and subsequent resignation from the state bar.  The Sanders court based its holding in large part on the fact that Sanders was a death row inmate with appointed habeas counsel.  See id. at 719 ("We appointed counsel to represent petitioner on direct appeal and in habeas corpus proceedings . . .

7

State law requires counsel be appointed for capital prisoners seeking to pursue state postconviction remedies."). The court is not aware of any decision extending the Sanders holding to situations involving non-capital petitioners who retain their own counsel. However, assuming that California would consider petitioner's claim under the Sanders rule, the court still finds insufficient evidence of abandonment to constitute good cause for the filing delay.

California law places the burden on petitioner to establish good cause for any substantial filing delay. Gallego,18 Cal. 4th at 825. A bare allegation of abandonment by prior counsel, without more, is not sufficient for a habeas petitioner to fulfill this burden. Sanders, 21 Cal. 4th at 722. A court must examine closely any proffered justification for substantial delay, including the particular circumstances of a case in which a petitioner attempts to establish good cause due to abandonment by counsel. Id.

Looking at the particular circumstances of this case, particularly the time and manner of Mr. Dangler's departure and petitioner's retention of current counsel, the court is not persuaded that petitioner was abandoned by counsel at any point in time. Petitioner has entered into evidence a series of letters Mr. Dangler wrote to him. See Rector Aff., Exs. A-B. Three of these letters were sent during the relevant time period, between the Superior Court's denial of collateral relief of February 25, 2004 and Mr. Dangler's resignation on or about June 28, 2004. Id. Rather than showing abandonment, these letters suggest Mr. Dangler was continuing to actively work on petitioner's case, drafting a petition for the appellate court and asking petitioner for a declaration. While Mr. Dangler's actions in this case may have been somewhat delayed, this showing is far from proving abandonment by counsel.

When Mr. Dangler eventually was forced to resign from the bar and drop petitioner as a client, he appears to have taken steps to ensure petitioner maintained counsel. In a letter to petitioner dated June 11, 2004, Mr. Dangler recommended C. Roman Rector as someone who "has been working on, and assisting me with, some of my cases over the past few years." Rector Aff., Ex. A. Mr. Rector's own affidavit reveals he began appearing for Mr. Dangler's law

1 office in bankruptcy and creditor proceedings in September 2001, and that he took over
2 Mr. Dangler's bankruptcy practice in March 2002. Id. at 3:16-26.  Between Spring 2002 and
3 June 2004, Mr. Rector appeared for Mr. Dangler in two criminal evidentiary hearings, and, in late
4 June 2004, he substituted into some of Mr. Dangler's ongoing criminal proceedings, including
5 petitioner's. Cf. id. at 4:1-8 (Rector affidavit including cryptic, unexplained statement he
6 "unwittingly agreed" to substitutions at this time).  Another attorney, Frederick Thomas, drafted
7 one habeas corpus petition on behalf of Mr. Dangler's office sometime in 2001, without
8 compensation.  Affidavit of Frederick Thomas (Thomas Aff.) at 2: 9-12.  In his June 11, 2004
9 letter, Mr. Dangler states that Mr. Rector was keeping a large portion of the staff from
10 Mr. Dangler's office, and that the substitution of Mr. Rector as counsel would cost petitioner
11 nothing.  Rector Aff., Ex. A.

12          These facts, all proffered by petitioner, do not suggest a situation wherein he was
13 abandoned by his attorney and forced to find new counsel.  While Mr. Rector may not have
14 contributed directly to petitioner's case prior to Mr. Dangler's resignation, the sharing of cases
15 and office staff suggests the two attorneys had an ongoing professional relationship that
16 facilitated a relatively seamless transition of workload.  Thus, the evidence tends to show
17 petitioner was continuously represented by counsel until on or about July 7, 2004, when Mr.
18 Dangler transferred the case (with petitioner's consent) to another attorney positioned to take
19 over representation promptly.  On this record, it simply cannot be said that Mr. Dangler left
20 petitioner in the same position as if he had been unrepresented, as required to find abandonment
21 under Sanders.  Considering the specific circumstances of this case, the court concludes
22 petitioner was not so abandoned in this case.  Accordingly, the court finds a California court
23 would conclude petitioner did not have good cause for the substantial delay in filing his petition
24 in the California Supreme Court.

25          A California court would still consider an untimely petition if petitioner presents
26 facts showing a fundamental miscarriage of justice.  Clark, 5 Cal. 4th at 759.  A fundamental

miscarriage of justice can be established by showing: (1) an error of constitutional magnitude leading to a trial so unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (2) the petitioner is actually innocent of the crime or crimes of which he has been convicted; (3) the death penalty was imposed by a judge or jury that had such a grossly misleading profile of the petitioner before it that absent the error or omission no reasonable judge or jury would have imposed a death sentence; or (4) petitioner was convicted under an invalid statute. Id. Reviewing the record, the court finds petitioner has not made any such showing. A California court would have dismissed the petition to the California Supreme Court as being untimely. For these reasons, petitioner is not entitled to statutory tolling for the 161 day period between the Superior Court's denial of collateral relief and the filing of the petition in the California Supreme Court.

### C. Equitable Tolling

In supplemental briefing requested by the court, petitioner argues he is entitled to equitable tolling of the AEDPA statute of limitations, due primarily to the egregious conduct of his former habeas counsel Richard Dangler. The Ninth Circuit has held:

> We will permit equitable tolling of AEDPA's limitations period only if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time. When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate.

Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999) (internal quotations and citations omitted).

It is petitioner's burden to show he is entitled to equitable tolling. Espinoza-Matthews v. People of the State of California, 432 F.3d 1021, 1026 (9th Cir. 2005). To meet this burden, he must demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). Equitable tolling is justified in few cases, and "the threshold necessary to trigger equitable tolling under the AEDPA is very high, lest the exceptions swallow the rule." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003).

The Ninth Circuit has recognized that an attorney's "egregious conduct" may be grounds for equitable tolling. In Spitsyn v. Moore, the court granted equitable tolling where retained counsel failed to file the federal habeas petition in a timely fashion, refused contact with petitioner and his mother, and failed to release petitioner's files and records until two months after the AEDPA statute of limitations had run. Id. However, the court noted that ordinary attorney negligence, such as the miscalculation of the statute of limitations deadline, the provision of misinformation regarding the deadline, or simple delay, will not constitute extraordinary circumstances. Id. at 800.

The court must first determine whether or not Mr. Dangler's conduct in this case was sufficiently egregious to constitute an extraordinary circumstance. Id. at 801-2. If the court concludes it was, the court must then make an inquiry into whether petitioner can establish that he personally was diligently pursuing his federal habeas petition. Id.

Based on the facts addressed in White, it is established that Mr. Dangler engaged in fairly egregious behavior while counsel for other habeas corpus petitioners. In re White, 121 Cal.App.4th at 1456 ("the attorney abused the writ process, and his clients, by filing frivolous habeas corpus petitions that have absolutely no chance of success"); see also id. at 1456-59. However, petitioner has not alleged any particular egregious conduct with regard to his own case. In supplemental briefing, petitioner alleges only that, "[h]aving full knowledge that Petitioner's habeas petition must be filed within the AEDPA's twelve-month statutory period, Richard Dangler took nearly six months to file the first petition then another six months before informing Petitioner that he would be unable to file his second petition on [sic] the California Supreme Court." Pet'r's Supplemental Mem. P. & A. (docket no. 19) at 4:4-10. Such ordinary delay and miscalculation of filing deadlines are examples of simple attorney negligence, insufficient to trigger equitable tolling. Spitsyn, 345 F.3d at 800; Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001).

/////

1  Furthermore, the court notes that, unlike the attorney at issue in <u>Spitsyn</u>,
2 Mr. Dangler kept in regular contact with petitioner during the time period at issue in the instant
3 case. Petitioner has offered letters dated March 1, 2004, and May 6, 2004, <u>see</u> Rector Aff., Ex. B,
4 in which Dangler informs petitioner of developments in the case and expresses a desire to
5 continue representing petitioner. These letters do not suggest a situation similar to the one in
6 <u>Spitsyn</u>, in which the attorney refused all contact with the petitioner and his parents for over a
7 year. <u>Spitsyn</u>, 345 F.3d at 798.  Without more specific evidence of misconduct in the instant
8 case, the court concludes that Mr. Dangler's actions here constitute at most attorney negligence,
9 insufficient to trigger equitable tolling.

10  Moreover, Petitioner has offered insufficient evidence of his own diligence and
11 efforts in pursuing habeas relief. The <u>Spitsyn</u> court noted that Spitsyn and his parents called and
12 wrote to the attorney on repeated occasions, and also filed two grievances with the Washington
13 State Bar Association.  <u>Id</u>.  Here, by contrast, petitioner has offered only the declaration of his
14 current attorney, who "can personally attest that Mr. Taylor and his family members have been
15 very involved in seeking habeas relief."  Decl. Of C. Roman Rector in Supp. of Supplemental
16 P. & A. (docket no. 20) at 3:14-15.  Petitioner has offered no concrete examples of his diligence,
17 such as letters or records of phone calls to Mr. Dangler.[2]  There also is nothing in the record to
18 indicate Mr. Dangler engaged in egregious conduct of the type described in <u>White</u> with respect to
19 petitioner's case. Thus, petitioner can satisfy neither element of equitable tolling of the AEDPA
20 statute of limitations.

21  Because the 161 day period between February 25, 2004 and August 5, 2004 is not
22 subject to statutory or equitable tolling, the court finds petitioner delayed a total of 470 days
23 before filing the instant petition in this court.  Thus, the petition is time-barred.

---

25  [2] On August 28, 2007, the court gave petitioner the opportunity to submit any comments or materials relating to the pending motion to dismiss directly to the court.  He has not responded
26 to the court's invitation.

1       Accordingly, IT IS HEREBY RECOMMENDED that respondent's August 9, 2006 motion to dismiss be granted.

      These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 26, 2007.

_____
U.S. MAGISTRATE JUDGE

amc/tayl2528.2254b